IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


| JAMES R. YORK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:10CV665 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social | ) |
| Security,[1] | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, James R. York, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act").[2] The Court has before it the

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, resulting in her automatic substitution as Defendant, pursuant to Federal Rule of Civil Procedure 25(d).

[2] "The Social Security Act comprises two disability benefits programs. The [DIB] Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI) . . . provides benefits to indigent disabled persons." Craig v. Chater, 76 F.3d 585, 589 n.1 (4th Cir. 1996). Plaintiff's Complaint states that he applied for DIB "and/or" SSI, that an Administrative Law Judge denied benefits, that the Appeals Council refused further review on July 3, 2010, and that he seeks "judicial review . . . [of] the final decision of the Commissioner holding that [he] is not entitled to [DIB] and/or [SSI] . . . ." (Docket Entry 1 at 1-2.) Defendant, however, in moving for judgment, pointed out (with accurate citations to the record) that the denial of Plaintiff's SSI application occurred on the date he filed his SSI and DIB applications (April 12, 2007), because of excess income, that denial of Plaintiff's DIB application occurred later (May 19, 2007), and that Plaintiff sought further administrative review only as to the DIB

certified administrative record (cited herein as "Tr. \_\_") and the parties have filed cross-motions for judgment (Docket Entries 9, 11). For the reasons that follow, the Court should remand this case for further administrative proceedings.

**PROCEDURAL HISTORY**

After denial of his DIB application (Tr. 84-97), both initially and on reconsideration (Tr. 43-53), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 60). Plaintiff and his attorney appeared at the hearing. (Tr. 23-42.) The ALJ thereafter issued a decision finding Plaintiff not disabled within the meaning of the Act. (Tr. 10-22.) The Appeals Council denied Plaintiff's request for review (Tr. 7), thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review (Tr. 1-3).

In making this disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] last met the insured status requirements of the . . . Act on September 30, 2005.
>
> 2. [Plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of November 18, 2004 through his date last insured of September 30, 2005 (20 CFR 404.1571 *et seq.*).

---

denial, such that the final decision of the Commissioner arising from the refusal of review by the Appeals Council on July 3, 2010 (identified by Plaintiff's Complaint as the matter for which he sought judicial review) concerned only DIB (not SSI). (See Docket Entry 12 at 1-2 & n.1.) Plaintiff did not contest those facts in his response. (See Docket Entry 13.)

. . .

> 3. Through the date last insured, [Plaintiff] had the following severe impairments: obesity, lumbar disc disease with a history of a fusion, and borderline intellectual functioning (20 CFR 404.1520(c)).
>
> . . .
>
> 4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, [Plaintiff] had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b). "Light work" involves lifting or carrying no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. [Plaintiff] was capable of: occasionally lifting and carrying twenty pounds; frequently lifting/carrying 10 pounds; standing or walking six hours of an eight hour workday; and sitting six hours of an eight hour workday. [Plaintiff] was also limited to routine, repetitive tasks consistent with unskilled work.

(Tr. 15-17.)

The ALJ thereafter did not make findings regarding the physical and mental demands of Plaintiff's past relevant work or whether Plaintiff retained the ability to perform his past relevant work. (See Tr. 10-22.) Instead, the ALJ proceeded to the final stage of the review process and identified Plaintiff as 34 years old (defined as a younger individual) on his alleged onset of disability date, with a marginal education and the ability to

3

communicate in English. (Tr. 21.) The ALJ further described transferability of job skills as a non-issue due to the unskilled nature of Plaintiff's past relevant work. (Id.) Relying on Social Security Ruling 83-10, <u>Determining Capability to Do Other Work – the Medical-Vocational Rules of Appendix 2</u> and using Rule 202.17 of the Medical-Vocational Guidelines as a framework for his decision, the ALJ then took administrative notice of the approximately 1,600 unskilled sedentary and light jobs listed in the Dictionary of Occupational Titles and concluded that a significant number of jobs existed in the national economy that Plaintiff could perform. (Tr. 21-22.) Accordingly, the ALJ ruled Plaintiff not under a "disability," as defined by the Act, at any time from his onset date through his date last insured. (Tr. 22.)

### **DISCUSSION**

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached

through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not

disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting that issue, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)). "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Hall, 658 F.2d at 264. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent

that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to a claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only

7

whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## **Assignments of Error**

Plaintiff raises two issues for judicial review, i.e., that the ALJ erred by improperly discounting the opinions of (1) a primary treating source and (2) a consultative examiner. (Docket Entry 10 at 3-12; Docket Entry 13 at 1-2.) Defendant contends that the ALJ properly evaluated both of those opinions and that

---

after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

substantial evidence supports the ALJ's determination of no disability. (Docket Entry 12 at 5-15.)

1.  **Treating Physician's Opinion**

Plaintiff argues that the ALJ erred by failing to give adequate weight to the opinion of Dr. David S. Jones, in violation of the treating physician rule. (Docket Entry 10 at 4-10.) According to Plaintiff, the ALJ should have credited Dr. Jones's opinion that Plaintiff could not engage in repetitive bending and needed the option to sit or stand during the workday, rather than rely on the opinion of Dr. David Brown, a non-examining state agency physician. (Id. at 6-10.) Plaintiff deems the ALJ's error in this regard significant because the inclusion of a restriction on bending and a sit/stand option in Plaintiff's RFC would have required the ALJ to solicit the testimony of a VE to assess the availability of suitable jobs in the national economy. (Id. at 10.) These arguments have merit.

The treating physician rule generally requires an ALJ to give controlling weight to the opinion of a treating source as to the nature and severity of a claimant's impairment, on the ground that treating sources "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual

9

examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2).[6] The rule also recognizes, however, that not all treating sources or treating source opinions deserve such deference.

First, the nature and extent of each treatment relationship may temper the weight afforded. 20 C.F.R. § 404.1527(d)(2)(ii). Further, a treating source's opinion controls only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590; accord Mastro, 270 F.3d at 178. Finally, opinions regarding the ultimate issue of disability, regardless of source, do not receive controlling weight. See 20 C.F.R. § 404.1527(e).

Applying these principles to the ALJ's decision, the Court should find that the ALJ erred in his evaluation of Dr. Jones's opinion. The ALJ found as follows:

> [G]reater weight is given to Dr. Brown's opinion that [Plaintiff] does not have postural limitations because [Plaintiff]'s activities of daily living do not support

---

[6] Effective March 26, 2012, a regulatory change recodified the treating physician rule as 20 C.F.R. § 404.1527(c)(2), but did not impact the substantive language of the rule. See 77 Fed. Reg. 10651–10657 (Feb. 23, 2012). Given that all material events in this action precede this non-substantive regulatory change, this Recommendation uses the prior codification.

10

> [an RFC] with postural limitations or Dr. Jones'[s]
> opinion that [Plaintiff] should avoid repetitive bending.
> Finally, little weight is given to Dr. Jones'[s] opinion
> that [Plaintiff] must have the opportunity to change
> positions between sitting or standing, as it is not
> supported by the totality of the medical evidence.

(Tr. 20.) Neither of the reasons given by the ALJ for according little weight to Dr. Jones's opinion suffices.

First, the ALJ's conclusion that Plaintiff's reported daily activities conflict with an inability to repetitively bend lacks record support. At the hearing, Plaintiff testified that his daily activities consisted of helping his daughter with her homework, playing games like Monopoly with her, preparing some meals, dusting and sweeping <u>but without doing a lot of bending</u>, using a riding lawn mower, driving locally twice a week, grocery shopping and visiting with family. (Tr. 30-32.) None of these activities requires repetitive bending. Moreover, in the testimony about daily activities on which the ALJ relied, Plaintiff expressly denied engaging in repetitive bending. (Tr. 30.)

Second, the ALJ's finding that Dr. Jones's opinion that Plaintiff needed a sit/stand option "is not supported by the totality of the medical evidence" falls significantly short of the degree of explanation required by the regulations for treating sources. Dr. Jones is a neurosurgeon who treated Plaintiff for his lower back and radicular pain for nearly a year and a half (beginning four days after Plaintiff's date last insured),

11

including evaluating a discogram and post-discogram CT scan and performing lumbar fusion surgery on Plaintiff. (Tr. 203-16, 249-50.) A preclusion from repetitive bending and a requirement for a sit/stand option represent neither extreme limitations, nor limitations inconsistent with Dr. Jones's objective findings on examination, which show that Plaintiff suffered lower back and radicular pain following an injury to his lower back which eventually resulted in the need for lumbar fusion. (Id.) Under these circumstances, rejection of Dr. Jones's opinion based on a general statement that the opinion conflicts with the "totality of the medical record" constitutes reversible error. See, e.g., Neydavoud v. Astrue, 830 F. Supp. 2d 907, 911-12 (C.D. Cal. 2011) ("The ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of another examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. The ALJ must do more than offer his conclusions. Broad and vague reasons for rejecting the treating physician's opinion do not suffice." (internal citations and quotation marks omitted)).

Defendant urges that the ALJ acted properly in discounting Dr. Jones's opinion because he offered it on March 19, 2007, a year and a half after Plaintiff's date last insured. (See Docket Entry 12 at 12-13.) In particular, Defendant cites Johnson v. Barnhardt,

434 F.3d 650, 655-56 (4th Cir. 2005), for the proposition that this Court need not decide whether substantial evidence supports the ALJ's rejection of Dr. Jones's opinion, because an opinion offered well after the date last insured is "not relevant" to the issue of whether Plaintiff was disabled before his date last insured. (Id.)

This argument fails for two reason. First, the ALJ did not base his rejection of Dr. Jones's opinion on the ground that it post-dated the date last insured. A reviewing court generally should not uphold an ALJ's findings based upon reasons not relied upon, either expressly or impliedly, by the ALJ. Securities & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."); Patterson v. Bowen, 839 F.2d 221, 225 n.1 (1988) ("We must, however, affirm the ALJ's decision only upon the reasons he gave."); Cunningham v. Harris, 658 F.2d 239, 244 n.3 (4th Cir. 1981) ("We cannot affirm the decision of the Secretary on grounds not invoked by the agency."). Second, Johnson involved materially distinguishable facts, in that the Fourth Circuit there observed that the claimant had failed to argue "that the disabilities contained in the [later opinion] existed continuously from [the date last insured] to the present, and there [wa]s no objective medical evidence that the impairments observed by [the treating physician] . . . existed

13

prior to [the date last insured]." Johnson, 434 F.3d at 655-56. In contrast, the record here reflects that Plaintiff consistently sought treatment for and medical evidence showed a basis for lower back and radicular pain from the date of his back injury on November 18, 2004 (long before his date last insured), to the date of Dr. Jones's opinion on March 19, 2007. (Tr. 143-56, 195-235, 249-50.) Given that context, the fact that Dr. Jones's opinion post-dates Plaintiff's date last insured does not render that opinion per se irrelevant, particularly where (as here) the ALJ did not rely upon the timing of the opinion in rejecting it.

In sum, the ALJ's discounting of Dr. Jones's opinion constitutes reversible error requiring remand for further consideration of whether Plaintiff could engage in repetitive bending and/or needed a sit/stand option during the workday.

**2. Consultative Examiner's Opinion**

Plaintiff also asserts that the ALJ erred by giving "little weight" to the opinion of consultative examiner Jon Standahl, Ph.D. (Docket Entry 10 at 10-12.) Dr. Standahl performed a psychological evaluation of Plaintiff and concluded that he had marked limitation in his ability to (1) sustain attention to perform simple, repetitive tasks and (2) understand, retain and follow verbal

instructions. (Tr. 176.)[7] According to Plaintiff, the ALJ's rationale for assigning "little weight" to this opinion, that it conflicted with Dr. Standahl's own findings and Plaintiff's description of his daily activities, mischaracterized the record. (Docket Entry 10 at 11.) This contention falls short.

In evaluating Dr. Standahl's opinion, the ALJ stated:

> Dr. Standahl found that [Plaintiff] had marked limitation in his ability to understand, retain, and follow verbal instructions. He further found that [Plaintiff]'s ability to sustain attention to perform simple, repetitive tasks is markedly limited. . . . Dr. Standahl's opinion that [Plaintiff] has marked limitations in [h]is ability to understand, retain, and follow instructions and perform simple, repetitive tasks, is rejected here as it is inconsistent with his own findings that [Plaintiff]'s recent and remote memory are adequate. Furthermore, the overall evidence of record, including [Plaintiff]'s testimony that he has looked for jobs on the computer, and therefore believes he is mentally capable of work supports the conclusion that [Plaintiff] is capable of performing routine, repetitive tasks consistent with unskilled work.

(Tr. 20-21; see also Tr. 17 (setting forth ALJ's statement that he gave "little weight to Dr. Standahl's opinion . . . as it [wa]s inconsistent with . . . [Plaintiff]'s own description of his activities")). Substantial evidence supports those determinations.

First, Dr. Standahl's findings of marked limitations in following verbal instructions and maintaining attention do indeed conflict with his findings that Plaintiff possessed adequate

---

[7] In the context of mental deficiencies, "marked" corresponds to the second-highest, possible level of limitation, less than "extreme," but greater than "moderate," "mild," and "none." See 20 C.F.R. § 404.1520a(c)(4).

memory, findings which necessarily depend on Plaintiff adequately following instructions and sufficiently maintaining attention for Dr. Standahl to perform memory testing and to conclude that Plaintiff's memory functioned properly. (Tr. 176-78.) Moreover, none of the findings in Dr. Standahl's report support <u>marked</u> limitation in attention and ability to follow instructions. Plaintiff's scores on the Wechsler Memory Scale III placed him in the <u>mild</u> range of memory deficiency and Plaintiff's Global Assessment of Functioning ("GAF") score of 57[8] placed him in the upper end of <u>moderate</u> difficulty in occupational functioning. (Tr. 176-77.) Similarly, Plaintiff's reported daily activities, including helping his daughter with her homework, playing games like Monopoly with his daughter, preparing some meals, driving locally twice a week, grocery shopping and looking for jobs on his computer (<u>see</u> Tr. 30-32, 34), contradict a finding of <u>marked</u> limitation in maintaining attention and following directions for purposes of performing simple tasks.

Given the foregoing record, the ALJ did not reversibly err in evaluating Dr. Standahl's opinion.

---

[8] The GAF uses a 100-point scale to show an individual's functional level. American Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 32 (4th ed. text revision 2000). A GAF of 51 to 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." <u>Id.</u> at 34. A new edition of the leading treatise discontinued use of the GAF. <u>See</u> American Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 16 (5th ed. 2013).

**IT IS THEREFORE RECOMMENDED** that Defendant's decision finding no disability be reversed and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings: 1) to re-evaluate the medical opinion of Dr. David S. Jones; 2) if such re-evaluation results in the inclusion of additional limitations in Plaintiff's RFC, to assess whether Plaintiff retained the ability to return to his past relevant work prior to his last date insured; and 3) if Plaintiff could not have returned to such work, to consult a VE to determine the impact of those additional limitations on the number of available jobs that Plaintiff could have performed. As a result, Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) should be denied and Plaintiff's Motion for Summary Judgment (Docket Entry 9) should be granted in part and denied in part, in that the Court should remand the case for further administrative proceedings, but should not order an immediate award of benefits.

                                            /s/ L. Patrick Auld
                                                 **L. Patrick Auld**
                            **United States Magistrate Judge**

February 3, 2014